IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ALETHEA F. MEHDIPOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02495 |
| | ) | |
| PAOLA UNIFIED SCHOOL DISTRICT 368, | ) | |
| **SERVE:** | ) | **JURY TRIAL REQUESTED** |
| Matt Meek, Superintendent | ) | |
| 1115 East 303rd Street | ) | |
| Paola, KS 66071 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| AMANDA GERKEN, President of Paola USD 368 | ) | |
| Board of Education, in her official and | ) | |
| individual capacity, | ) | |
| 903 Edgewood Drive | ) | |
| Paola, KS 66071 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| SAMANTHA M POETTER-PARSHALL | ) | |
| Vice-President of Paola USD 368 Board of | ) | |
| Education, in her official and individual capacity | ) | |
| 16755 W. 299th Street | ) | |
| Paola, KS 66071 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| KELLY FRANKE, Member of Paola USD 368 | ) | |
| Board of Education, in her official and individual | ) | |
| capacity, | ) | |
| 24458 W. 255th Street | ) | |
| Paola, KS 66071 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| KRISTIAN GERKEN, Member of Paola USD 368 | ) | |
| Board of Education, in her official and individual | ) | |
| capacity, | ) | |
| 22360 W. 303rd Street | ) | |
| Paola, KS 66071 | ) | |
| | ) | |

And                                                        )
                                                          )
SCOTT GOLUBSKI, Member of Paola USD 368                    )
Board of Education, in his official and individual         )
capacity,                                                  )
      33105 Harmony Road      )
      Paola, KS 66071          )
                                                          )
And                                                        )
                                                          )
MICHELLE LATTO, Member of Paola USD 368                    )
Board of Education, in her official and individual         )
capacity,                                                  )
      105 E. Kaskaskia Street  )
      Paola, KS 66071          )
                                                          )
And                                                        )
                                                          )
SHAWN MILLER, Member of Paola USD 368                      )
Board of Education, in his official and individual         )
capacity,                                                  )
      31215 W. 311th Street    )
      Paola, KS 66071          )
                                                          )
        Defendants.  )

# **COMPLAINT**

     Plaintiff, Alethea F. Mehdipour, by and through counsel, states and alleges against Paola

Unified School District 368, and/or in their individual and official capacities, Angela Gerken,

Samantha Poetter-Parshall, Kelly Franke, Kristian Gerken, Scott Bolubski, Michelle Latto, and

Shawn Hill, her causes of action for employment discrimination and retaliation under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) (1) ("Title VII"), the Americans

With Disabilities Act, As Amended, 42 U.S.C. §12101, et seq., ("ADAAA"), the Civil Rights Act

of 1866, 42 U.S.C. §1981 ("§1981"), and the Civil Rights Act of 1866, 42 U.S.C. §1983 ("§1983")

as follows:

## PARTIES

1.      Plaintiff, Alethea F. Mehdipour, is a 47-year-old female of Iranian (Persian) descent, residing at 501 East Piankishaw Street Paola, Kansas 66071, and was at all relevant times an "employee" of Defendants under Title VII, the ADAAA, and §1981, and §1983.

2.      Defendant Paola Unified School District 368 (hereinafter, "PSD"), is now and was at all times hereafter mentioned, a public school district located in Miami County, Kansas, with its principal office at 1115E 303rd St, Paola, Kansas 66071.

3.      Defendant Amanda Gerken, is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education and is now and, upon information and belief, was at all times hereafter mentioned, the President of the Paola Board of Education.  At all times relevant to this Complaint, Defendant Amanda Gerken acted under color of law and in her official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

4.      Defendant Samantha M. Poetter-Parshall (hereinafter, "Poetter-Parshall"), is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education and is now and, upon information and belief, was at all times hereafter mentioned, the Vice-President of the Paola Board of Education.  At all times relevant to this Complaint, Defendant Poetter-Parshall acted under color of law and in her official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

5.      Defendant Kelly Franke (hereinafter, "Franke"), is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education.  At all times relevant to this Complaint, Defendant Franke acted under color of law and in her official and

individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

6.     Defendant Kristian Gerken, is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education.  At all times relevant to this Complaint, Defendant Kristian Gerken acted under color of law and in her official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

7.     Defendant Scott Golubski (hereinafter, "Golubski"), is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education.  At all times relevant to this Complaint, Defendant Golubski acted under color of law and in his official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

8.     Defendant Michelle Latto (hereinafter, "Latto"), is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education.  At all times relevant to this Complaint, Defendant Latto acted under color of law and in her official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

9.     Defendant Shawn Miller (hereinafter, "Miller"), is now and was at all times hereafter mentioned, an elected member of Defendant PSD's Board of Education.  At all times relevant to this Complaint, Defendant Miller acted under color of law and in his official and individual capacity pursuant to the Constitution, statutes, ordinances, regulations, policies, and customs and usage of the State of Kansas, and the United States.

## JURISDICTION AND VENUE

10.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically Title VII, the ADAAA, §1981, and §1983.

11.    Venue is proper within this District because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, the unlawful employment practices are alleged to have been committed in this District, including the unlawful employment practices set forth herein that are alleged to have been committed in this District by the Defendants in Paola, Miami County, Kansas.

## FACTUAL ALLEGATIONS

12.    Plaintiff was employed as a substitute special education paraprofessional at PSD by Defendants from approximately December 2023 until her termination on or about June 10, 2024.

13.    In her role as a substitute special education paraprofessional, Plaintiff was hired directly by Defendant PSD who maintained control over how, when, and where Plaintiff's substitute paraprofessional duties were performed.

14.    At all times relevant to this litigation, Plaintiff employed more than fifteen employees in either full-time, part-time, temporary, or seasonal positions.

15.    Throughout her employment at Paola USD, Plaintiff performed all duties of her position as required and received praise and excellent reviews from Paola USD's students, parents, and teachers.

16.    In November 2023, an election was held to fill several spots on Defendant PSD's Board of Education.

17.    Throughout the election cycle leading up to the November 2023 election, Plaintiff observed what she believed to be a tone and tenor of campaign rhetoric that was divisive and that Plaintiff believed unfairly targeted and/or advocated for policies that would unlawfully discriminate against students of color, students of refugee/immigrant parents, gay and lesbian students, and special needs students.

18.    In the months leading up to the November 2023 Board of Education election, Plaintiff also observed a series of decisions by Defendant PSD's outgoing Board of Education which she believed reflected a move towards policies and/or procedures that unfairly and unlawfully targeted for discrimination students of color, students of refugee/immigrant parents, gay and lesbian students, and special needs students.

19.    Based on the foregoing, in December 2023, Plaintiff decided to attend an official, public school board meeting in her capacity as a parent and part-time employee of the district. Upon information and belief, this school board meeting in December 2023 was to be the last board meeting for several members of Defendant PSD's Board of Education who had either lost their positions and/or had decided to step down from their roles as Members of Defendant PSD's Board of Education.

20.    Plaintiff also understood that all of the newly elected members of Defendant PSD's Board of Education would be in attendance and recognized during this December 2023 official, public school board meeting.

21.    At the school board meeting, during a portion of the school board meeting expressly reserved for questions and/or comments from the public, Plaintiff expressed concerns regarding the rhetoric seen during the previous election cycle and recent decisions the board made that

unfairly targeted Paola USD's students of color, students of refugee/immigrant parents, gay and lesbian student, and students with special needs.

22.     In her role as a substitute paraprofessional, Plaintiff interacted with special needs students of Defendant PSD on a daily basis.

23.     During Plaintiff's comments at the December 2023 school board meeting, Plaintiff encouraged all present Board of Education members, as well as all newly-elected and incoming Board of Education members to remain cognizant of the fact that the job of the Board of Education was to represent and support the needs of *all* Defendant PSD's students, Plaintiff implored the current/newly-elected members of the Board of Education to leave behind the hateful and/or divisive rhetoric against minority and/or marginalized students, and Plaintiff encouraged the current/newly-elected Board of Education members to provide a supportive, welcoming, and nurturing environment for  all students in any future Board of Education decisions and/or policy-making.

24.     During Plaintiff's comments at the December 2023 school board meeting, Plaintiff also identified herself as an racial/ethnic minority and spoke about how her experiences as such informed her association with Defendant PSD's marginalized students, including those of color, those whose parents were immigrants or refugees, those who identified as gay or lesbian, and those who identified as transgender or non-binary.

25.     During Plaintiff's comments at the December 2023 school board meeting, Plaintiff also identified herself as the parent of a special needs student and educator of students with special needs and spoke about how her experiences as such informed Plaintiff's association with all Defendant PSD's special needs and/or disabled students.

26.    In March 2024, based on the recommendations and advice of her Cottonwood Elementary supervisors, Plaintiff applied for a full–time special education teaching position with Defendant PSD at its Cottonwood Elementary School.

27.    At the time, Plaintiff was currently working for Paola USD as a paraprofessional substitute teacher for the 2023-2024 school year where she provided classroom support in self-contained and general education classrooms as assigned by special education teachers and principals.

28.    At the time of application, Plaintiff was finalizing her Bachelor of Science as well as the Teacher Apprentice Program requirements at Wichita State University.

29.    Plaintiff worked in various capacities focused on individuals with special needs spanning over 13 years at the time of application.

30.    In March 2024, Plaintiff was also a parent of Paola USD students.

31.    Plaintiff submitted four exemplary letters of recommendation along with her application.

32.    Upon information and belief, after Plaintiff submitted her application for the full-time special education teaching position at Cottonwood Elementary, the Cottonwood Elementary's principal formally recommended to Defendant's Superintendent that Plaintiff be hired for the full-time teaching position for which she ultimately applied.

33.    Upon information and belief, prior to a June 10, 2024 Board of Education meeting, Defendant PSD's Superintendent and Cottonwood Elementary's Principal accepted Plaintiff's application and, pending final board approval, hired Plaintiff to be a special education teacher for Defendant PSD at Cottonwood Elementary School.

34.    On or about June 10, 2024, Defendant PSD held a school board meeting which, among other things, included an agenda item for the Board of Education to approve several full-time hiring decisions made by Defendant PSD in the Spring of 2024, including its decision to hire Plaintiff for a full-time special needs teacher position at Cottonwood Elementary.

35.    During this June 10, 2024 school board meeting, Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller took up and approved for hire all but one application and/or recommendation for hire for full-time employment—Plaintiff's position as a full-time special education teacher at Cottonwood Elementary.

36.    Instead, during a closed session, Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller rejected the recommendations of Cottonwood Elementary's Principal and Defendant PSD's superintendent by denying approval of Defendant PSD's decision to hire Plaintiff as a full-time special needs teacher at Cottonwood Elementary.  Importantly, the Board of Education also rescinded any prior offer for Plaintiff to serve as a part-time substitute special needs paraprofessional in the 2024-2025 academic school year.

37.    Former school board members and current and/or former educators and administrators at Paola USD have separately and individually reached out to Plaintiff and acknowledged how unprecedented it was for the Board of Education to reject a principal or superintendent's hiring recommendation, particularly where the applicant has the credentials, recommendations, and onsite experience that demonstrated the ability to adequately perform the position.

38.    In rejecting Plaintiff's application for full-time employment and in rescinding Defendant PSD's offer for Plaintiff to continue to act as a part-time substitute special needs

paraprofessional, Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller altered Defendant PSD's hiring, promotion, and transfer customs and policies so that such current and/or future customs and policies related to hiring would be guided by unlawful race and/or ethnicity discrimination, and/or unlawful discrimination against individuals associating with minority, special needs, and/or gay and lesbian students, and/or by unlawful retaliation against individuals who engage in protected First Amendment speech that members of the Board disagree with at Defendant PSD's open and public school board meetings.

39.    The treatment of Plaintiff by Defendants was based upon the illegal, discriminatory, and retaliatory motives of the Defendants.  The effect of the customs, patterns, practices, and policies pursued and created by Defendants PSD, Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller has been to limit, segregate, classify and discriminate against Plaintiff in ways that jeopardized her career and tended to deprive her of employment opportunities, and otherwise adversely impacted the terms, conditions, and privileges of her status as an employee of Defendant PSD.

40.    As it relates to Defendants Kristian Gerken and Amanda Gerken, Plaintiff's religious association was also a motivating factor in their decision to deny Plaintiff's recommendation for hire.

41.    Plaintiff and the Defendants Amanda Gerken and Kristian Gerken were all, for many years, associated with Cross Point Church in Paola, Kansas.

42.    In or around 2014, Defendants Amanda Gerken and Kristian Gerken had a dispute with leadership at Cross Point which resulted in Defendants Amanda Gerken and Kristian Gerken leaving the church and forming a now prominent and influential church in Paola, Kansas called Living Proof.

43.    Upon information and belief, Plaintiff's decision not to join Living Proof as a worship member angered Defendants Amanda Gerken and Kristian Gerken.

44.    Upon information and belief, Plaintiff's dissenting religious views and practices motivated Defendants Amanda Gerken and Kristian Gerken to unlawfully advocate for denying Plaintiff's recommendation for hire and to authorize her unlawful termination.

45.    All of the actions or inactions described above or hereinafter were accomplished by agents, servants, and/or employees of Defendant PSD, including, but not limited to those taken by Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller, and were taken within the course and scope of such individuals' employment with Defendant PSD.  These adverse actions against Plaintiff by Defendants were taken with bad faith and malice.

46.    All of the conduct alleged herein occurred under color of state law, and constituted state action for constitutional purposes.  Furthermore, the conduct violated clearly established constitutional rights of which reasonable officials would have known.  These rights specifically include such clearly established legal rights as these: the freed of speech rights in connection with Plaintiff's statements described herein; the substantive due process rights (1) not to be terminated and/or denied employment for irrational, arbitrary, capricious, and/or unreasonable reasons, and (2) not to be treated in a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty, and also (3) not to be subject to conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity; and the equal protection rights in that Defendants had an illegitimate animus or ill-will motivating intentionally different treatment of Plaintiff based on her race/ethnicity, her religion,

her association with students that are racial minorities, gay or lesbian, the students of immigrants or refugees, or special needs/disabled, and no rational basis existed for such treatment.

47.    Because the actions and inactions of Defendants PSD, Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller were outrageous due to Defendants' evil motives or reckless indifference to the rights of others and/or were willful violations of law, Plaintiff is entitled to an award of punitive damages against Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller acting in their individual capacity and/or liquidated damages against Defendant PSD.

48.    Defendants' custom, pattern, practice and policy of behavior reflect a deliberate indifference that led to the deprivations of rights, privileges, and immunities secured to Plaintiff by the federal and state Constitutions as well as federal and state laws, including but not limited to the following: a) deprivation of Constitutional and statutory rights as set out herein; b) inadequate training and instruction of employees and/or Board Members as to the preservation of constitutional and statutory rights; c) acquiescence in the actions and omissions described throughout this pleading; d) failure to take remedial action against a known custom, pattern, practice, or policy of misconduct; and e) deliberate indifference and conscious disregard for a high risk that citizens' federally and state protected rights would be violated.

49.    The said actions, omissions, customs, policies, practices, procedures, patterns, decisions, instructions, and orders of Defendants were the motivating forces behind the Constitutional and statutory violations described in this pleading.  Those things are established in part by proof of knowledge and acquiescence.

50.    The described conduct violated clearly established federal and state protected rights of which every competent official in Defendants' respective positions would have, or should

have, been aware. As to Defendants' actions and omissions toward Plaintiff, there was no objectively reasonable reliance on existing law.

51.    Defendants were acting under color of state law during all times set out herein, specifically at the times the federal and state constitutional rights and statutory rights were violated.

52.    The disparate treatment of the terms and conditions of Plaintiff's employment as described here were due to illegal race/ethnicity discrimination, national origin discrimination, religious discrimination, associational discrimination, and/or retaliation for her actions to report and resist illegal conduct involving serious violations of law by Defendants and/or in retaliation for Plaintiff's exercise of her Constitutional and statutory rights or otherwise in violation of her rights as set forth herein.

53.    The actions of Defendants against Plaintiff and other similarly situated employees demonstrate a custom, pattern, practice and policy of discrimination and retaliation.

54.    Plaintiff experienced this custom and policy of disparate treatment in the terms and conditions of her employment based illegal race/ethnicity discrimination, national origin discrimination, associational discrimination, and/or retaliation by Defendants, including but not necessarily limited to her termination as a part-time substitute special needs paraprofessional and the recommendation/provisionally hiring of Plaintiff into a full-time special needs teacher at Cottonwood Elementary, without any legitimate reason and in violation of the law.

55.    Plaintiff was terminated in violation of law on or about June 10, 2024.

56.    Similarly situated, non-racial/ethnic minorities, from preferred religious backgrounds, and/or those that did not have an association with Defendant PSD's marginalized students, including those of color, those whose parents were immigrants or refugees, those who

identified as gay or lesbian, and those who identified as transgender or non-binary, were not subjected to the same adverse actions in the terms and conditions of their employment as Plaintiff experienced.

57.    Defendants' illegal, discriminatory, hostile, and retaliatory conduct against Plaintiff included hostile and discriminatory actions, and other adverse actions impacting the terms and conditions of Plaintiff's employment including her wrongful termination on or about June 10, 2024, and the failure to approve the recommended hiring of Plaintiff into a full-time special needs teacher position at Cottonwood Elementary on or about June 10, 2024.

58.    These adverse actions were taken without any legitimate reason and in violation of the law and less-qualified non-racial/ethnic minorities, from preferred religious backgrounds, and/or those that did not have an association with Defendant PSD's marginalized students, including those of color, those whose parents were immigrants or refugees, those who identified as gay or lesbian, and those who identified as transgender or non-binary, and/or those who had not complained about or reported discrimination or retaliation against marginalized students, were treated more favorably.

59.    The true reasons for the discriminatory and retaliatory employment actions of Defendant against Plaintiff, including but not limited to those adverse employment actions set forth above, were illegal racial/ethnic discrimination, national origin discrimination, religious discrimination, and/or associational discrimination.

60.    At the behest of Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller, Defendant PSD adopted a custom and policy of race/ethnic, religious, and/or associational discrimination and/or retaliation with respect to a hostile work environment, disparate hiring, firing and a focus on getting rid of minority employees or those

with associations to Defendant PSD's marginalized student population, including those of color, those whose parents were immigrants or refugees, those who identified as gay or lesbian, and those who identified as transgender or non-binary.

61.     Throughout Plaintiff's employment with Defendant, she was subjected to race, age, sex and disability discrimination and retaliation in violation of Title VII, the ADEA, the ADAAA and Sections 1981 and 1983.

62.     During her employment with Defendant PSD, Plaintiff met all qualifications for the position that she held with Defendant PSD.

63.     On or about October 1, 2024, Plaintiff filed a timely charge alleging race, ethnic, national origin, religious, and associational discrimination, and retaliation against Defendant PSD with the Equal Employment Opportunity Commission ("EEOC").

64.     On or about May 29, 2025 the United States Department of Justice and the EEOC mailed Notices of Right to Sue letters to Plaintiff.

65.     This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC and DOJ.

66.     Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## COUNT I – RACE, NATIONAL ORIGIN, ETHNIC, RELIGIOUS, AND/OR ASSOCIATIONAL  DISCRIMINATION (TITLE VII )
### [Defendant PSD ONLY]

67.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 66 above.

68.     Plaintiff's race, ethnicity, religion and/or national origin (Iranian/Persian American), and/or Plaintiff's association with students of color, students of immigrants and/or

refugees, gay and/or lesbian students, and/or non-binary and/or transgender students were a motivating and/or but for causal factor in Defendant PSD's intentional, continuing decisions to discriminate against her in the terms and conditions of her employment, including, but not limited to her wrongful termination and refusal to approve her hire into a full-time special needs teacher position for the 2024-2025 academic year. Similarly situated, less qualified, Caucasian/European American individuals, and/or individuals from preferred religious denominations, and/or individuals who did not have an association with students of color, students of immigrants and/or refugees, gay and/or lesbian students, and/or non-binary and/or transgender students were not subjected to the same adverse actions in the terms and conditions of their employment.

69. Defendant PSD knew or should have known of the unwelcome racial, ethnic, religious, national origin and/or associational discrimination against its employees, including Plaintiff.

70. Defendant PSD failed to take prompt and appropriate corrective action to end the race, national origin, ethnic, and/or association discrimination against its employees, including Plaintiff.

71. The Defendant PSD failed to make good faith efforts to enforce its policies to prevent race, national origin, ethnic, religious, and/or associational discrimination against its employees, including Plaintiff.

72. During Plaintiff's employment with Defendant PSD, she and similarly situated employees were subjected to an ongoing custom, pattern, practice and policy of discrimination in the terms and conditions of employment including but not limited discriminatory statements and actions including wrongful termination and failure to hire because of their race, national origin,

ethnicity, religious, and/or association with students of color, students of immigrants and/or refugees, gay and/or lesbian students, and/or non-binary and/or transgender students.

73.    As a direct result of the Defendant's illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits and other monetary damages associated with loss of work, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant PSD on Count I, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest through the date of trial and thereafter, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT II –RACE/ETHNIC AND/OR ASSOCIATIONAL DISCRIMINATION (§ 1981)
### [Defendant PSD Only]

74.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 73 above.

75.    Plaintiff's race and/or ethnicity (Persian), and/or Plaintiff's association with students of color and/or students of immigrants and/or refugees were a motivating and/or but for causal factor in Defendant PSD's intentional, continuing decisions to discriminate against her in the terms and conditions of her employment, including, but not limited to her wrongful termination and refusal to approve her hire into a full-time special needs teacher position for the 2024-2025 academic year.  Similarly situated, less qualified, Caucasian/European American

individuals and/or individual who did have an association with students of color and/or students of immigrants and/or refugees were not subjected to the same adverse actions in the terms and conditions of their employment.

76.    Defendant PSD knew or should have known of the unwelcome racial, ethnic, and/or association discrimination against its employees, including Plaintiff.

77.    Defendant PSD was acting under color of state law in its race/ethnicity-based free speech, substantive due process, and equal protection violations of Plaintiff's rights as set forth herein.

78.    Defendant PSD failed to take prompt and appropriate corrective action to end the racial, ethnic, and/or association discrimination against its employees, including Plaintiff.

79.    The Defendant PSD failed to make good faith efforts to enforce its policies to prevent racial, ethnic, and/or associational discrimination against its employees, including Plaintiff.

80.    During Plaintiff's employment with Defendant PSD, she and similarly situated employees were subjected to an ongoing custom, pattern, practice and policy of discrimination in the terms and conditions of employment including but not limited discriminatory statements and actions including wrongful termination and failure to hire because of their race, ethnicity, and/or association with students of color and/or students of immigrants.

81.    As a direct result of the Defendant's illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits and other monetary damages associated with loss of work, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant PSD on Count II, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest through the date of trial and thereafter, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT III – ASSOCIATIONAL DISABILITY DISCRIMINATION [ADAAA]
### [Defendant PSD Only]

82.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 81 above.

83.    Defendant PSD intentionally discriminated against Plaintiff in the terms and conditions of her employment due to her association with Defendant PSD's disabled students, and/or Defendant PSD's students with a record of disability, and/or because students Defendant PSD regarded as disabled, including, but not limited to her wrongful termination and refusal to approve Plaintiff being hired into a full-time special needs teacher position for the 2024-2025 academic year.   Similarly situated, less qualified, employees without an association to disabled/regarded as disabled students were not subjected to the same adverse actions in the terms and conditions of their employment.

84.    At all times relevant to this action, Plaintiff maintained an association with qualified individuals with a disability within the meaning of that term as utilized in the ADAAA, either as individuals with a physical or mental impairment, or because such students had a record of such

an impairment, or because Defendant PSD regarded the students with whom Plaintiff had an association as having such impairments.

85.    Defendant PSD discriminated against Plaintiff on the basis of her association with disabled students by wrongfully terminating her employment on or about June 10, 2024, and by refusing to approve Plaintiff being hired into a full-time special needs teacher position for the 2024-2025 academic year, thereby violating the ADAAA.

86.    Defendant PSD's illegal treatment of Plaintiff as set forth above and herein was motivated by Plaintiff's association with disabled students.

87.    Defendant PSD was aware of Plaintiff's association with disabled students.

88.    Defendant PSD was acting under color of state law in its disability-based free speech, substantive due process, and equal protection violations of Plaintiff's rights as set forth herein.

89.    As a direct and proximate result of the continuing pattern and practice of discrimination directed toward her or disparate treatment of her and of the Defendant PSD's termination of her and refusal to approve Plaintiff being hired into a full-time special needs teacher position at Cottonwood Elementary for the 2024-2025 academic school year, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant PSD on Count III, and requests an award of her actual damages, including but not limited to her lost wages

and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre and post judgment interest, and any such other relief as the Court deems just and proper.

### COUNT IV – 42 U.S.C. § 1983
**[Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller in their Individual and Professional Capacities]**

90.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 above.

91.    Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller intentionally engaged in unlawful practices by denying Plaintiff her constitutional and legal rights, all in violation of 42 U.S.C. § 1983. These denials were done by customs, practices, procedures, patterns, decisions, instructions, orders, and customs that took place under color of law.

92.    Plaintiff was consequently deprived of her federal and state constitutional rights to substantive due process, freedom of speech, and equal protection, as well as her statutory rights as set forth elsewhere herein.

93.    The denials of Plaintiff's rights as set forth above and herein included but were not limited to Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller's intentional continuing decisions to discriminate against Plaintiff in the terms and conditions of her employment as set forth above, including but not limited to her wrongful termination and Defendant's refusal to approve Plaintiff's hiring into a full-time special needs teacher position at Cottonwood Elementary for the 2024-2025 academic year, while similarly

situated, less qualified employees were not subjected to the same adverse actions in the terms and conditions of their employment.

94.    These adverse actions including but not limited to the termination of Plaintiff's employment and refusal to hire Plaintiff by Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller were taken because of Plaintiff's race, ethnicity, national origin, and/or association with Defendant PSD's students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students and in retaliation for her constitutionally protected speech on matters of public concern, specifically relating to Plaintiff's complaints regarding Defendants' policies and/or statements that unfairly and/or unlawfully targeted Defendant PSD's historically marginalized students, including those students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students.

95.    Plaintiff's exercise of her constitutional rights to free speech was a motivating factor in Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller's adverse actions against her in the terms and conditions of her employment as set forth above and herein.

96.    Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller were personally involved in causing the alleged deprivations of Plaintiff's constitutional rights and separately and/or additionally, had actual and/or constructive knowledge that deprivations of Plaintiff's constitutional rights were occurring.

97.    The actions and inactions described above and below demonstrate that Plaintiff was unlawfully treated in the terms, conditions, and privileges incident to her employment, all in violation of 42 U.S.C. § 1983.

98.     Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller maintained and/or were the architects of a custom, pattern, practice, and policy of illegal treatment in employment opportunities, terms and conditions based on race, ethnicity, national origin, religion, or association.

99.     As a direct and proximate result of Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller's unlawful acts, Plaintiff has suffered damages as set forth above and including but not limited to, economic loss in the form of lost wages and benefits; vocational-professional losses in the form of a detrimental job record, loss of employment, career damage, damage to reputation and a diminished career potential; inconvenience, loss of enjoyment of life, and mental distress in the form of embarrassment, humiliation, anxiety, emotional pain and suffering.

100.    Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller's unlawful conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller and to deter them from like conduct in the future.

101.    As a further and proximate result of the unlawful acts of Defendants, Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, permanent injunction, declaration of rights, reinstatement together with lost income and benefits, and her reasonable attorneys' fees and expenses incurred herein, pursuant to the provisions of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays under Count IV of the Complaint that this Court find that Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and

Miller deprived Plaintiff of rights, privileges, and immunities secured to her by law and the Constitution. The Court is further asked to grant and award to Plaintiff the following against Defendants Amanda Gerken, Poetter-Parshall, Franke, Kristian Gerken, Golubski, Latto, and Miller in their respective official and individual capacities: a) joint and several judgment in the amount allowed by law for her actual economic and compensatory damages, punitive damages, pre and post judgment interest; b) costs and expenses of this action, including reasonable attorneys' fees; and c) front pay, reinstatement, and such other or further equitable or other relief as this Court deems appropriate.

**COUNT V – RETALIATION (Title VII, ADAAA, and § 1981)**
**[Defendant PSD Only]**

102.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 101 above.

103.    Plaintiff had a good faith, reasonable belief that Defendant PSD was engaging in unlawful practices that are prohibited under Title VII, Sections 1981 and/or 1983, and the ADAAA, including disparate treatment by Defendant PSD against its students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students and she publicly reported her opposition to these unlawful discriminatory practices to Defendant PSD as set forth herein.

104.    Defendant PSD retaliated against Plaintiff on a continuing basis in the terms and conditions of her employment because of her opposition to unlawful practices and/or because of her protected actions in expressing her concern that Defendant PSD was failing to provide its students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students a safe educational environment and/or was crafting policies and an agenda that illegally discriminated against Defendant PSD's students of color, students with immigrant or

refugee parents, gay or lesbian students, and special needs students a hostile work environment. Similarly situated, less qualified employees who had not opposed unlawful discriminatory, harassing, and retaliatory practices were not subjected to the same adverse actions in the terms and conditions of their employment.

105.    Plaintiff's opposition to the Defendant PSD's unlawful practices, and/or her protected actions in expressing her concern that Defendant PSD was failing to provide its students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students a safe educational environment and/or that Defendant PSD was crafting policies and an agenda that illegally discriminated against Defendant PSD's students of color, students with immigrant or refugee parents, gay or lesbian students, and special needs students were motivating, determining, and/or but for causal factors in the Defendant PSD's decision to retaliate against her in the terms and conditions of her employment.

106.    As a direct and proximate result of the Defendant PSD's continuing pattern and practice of illegal retaliation directed toward her or disparate treatment of her and of the Defendant PSD's termination of her and refusal to hire Plaintiff into a full-time special needs teacher position at Cottonwood Elementary for the 2024-2025 academic year, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

107.    Defendant PSD failed to make good faith efforts to enforce its policies to prevent discrimination and retaliation against its employees, including Plaintiff.

108.    Defendant PSD was acting under color of state law in its retaliatory adverse actions in violation of Plaintiff's rights as set forth herein.

109.    Defendant PSD 's retaliatory conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under Title VII, the ADAAA, and § 1981, thus justifying an award of liquidated damages in an amount sufficient to punish Defendant PSD and to deter it from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant PSD on Count V, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial (Title VII, Section 1981 and/or 1983, and ADAAA), damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses (Title VII, Section 1981 and 1983, and ADAAA) damages for future loss of wages and benefits (Title VII, Section 1981 and 1983, and ADAAA), all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre and post judgment interest, and any such other relief as the Court deems just and proper (Title VII, Section 1981 and 1983, and ADA.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By  /s/ *Nickalaus Seacord*

Nickalaus Seacord       KS FED #78701
Ryan P. McEnaney       KS FED #78827
1621 Baltimore Avenue
Kansas City, Missouri  64108
816.471.4881 (Tel)
816.471.4883 (Fax)
nseacord@sirosmithdickson.com
rmcenaney@sirosmithdickson.com

**ATTORNEY FOR PLAINTIFF**